# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59932-5-II |
| Respondent, | |
| v. | |
| ROBERT AARON ESTES, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J.—Robert Estes was convicted of six counts of second degree child molestation; four counts pertaining to AJD (counts I-IV) and two counts pertaining to AB (counts V and VI). Estes appeals his convictions arguing (1) insufficient evidence supported his convictions pertaining to AB because no evidence supports the conclusion that Estes touched AB for his sexual gratification, (2) insufficient evidence supported two of his convictions pertaining to AJD because AJD only testified about two specific incidents, (3) the trial court abused its discretion by admitting AJD's forensic interview as a recorded recollection because AJD had sufficient knowledge of two instances of molestation at the time of trial and never had knowledge of additional instances, (4) Estes received ineffective assistance of counsel because his attorney did not move to sever the charges pertaining to AB from those pertaining to AJD, and (5) Estes' Fifth Amendment rights were violated when the trial court admitted statements made during Estes' law enforcement

interview because Estes had not been advised of his *Miranda*[1] rights. Estes raises a number of additional arguments in a statement of additional grounds for review.[2]

We conclude (1) the fact that Estes, an unrelated adult, placed his hand on AB's chest for an extended period of time for no medical or caregiving purpose, and that Estes similarly placed his hand on AJD's intimate parts for an extended period of time, supports the inference that Estes touched AB's chest for his sexual gratification, (2) AJD's general testimony concerning the multiple incidents in which Estes touched her vagina is sufficient evidence to support the four counts of child molestation pertaining to AJD, (3) the trial court did not abuse its discretion by admitting AJD's forensic interview as a recorded recollection because the substance of the interview demonstrated that AJD had knowledge of more than four instances of abuse at the time of the interview and her testimony at trial demonstrated that AJD could not remember the events well enough to testify about them fully and accurately at trial, (4) Estes' ineffective assistance of counsel claim fails under the prejudice prong because he does not challenge the trial court's ruling that evidence of the abuse against each victim was cross-admissible, and (5) Estes' Fifth Amendment rights were not violated because the interview was not custodial. Furthermore, we decline to address the issues raised in Estes' statement of additional grounds for review because they either are too vague to address, were already raised by appellate counsel, or rely on matters outside the record. Accordingly, we affirm Estes' convictions.

---

[1] *Miranda v. Arizona*, 384 U.S. 436., 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] RAP 10.10.

FACTS

I. BACKGROUND

Robert Estes moved next door to AB's family in 2018 or 2019 and quickly became a family friend. By the time AB was 11 years old, AB developed her own friendship with Estes, who was 31 years old, and would occasionally spend the night at his house. In 2022, Estes, AB, and AB's friend AJD worked together as scare actors at My Haunted Forest every weekend for four or five weeks. After working at the haunted forest, AB and AJD would often spend the night at Estes' house.

Sometimes, while AB was at Estes' house, she would get cold and cuddle with Estes to get warmer. Estes and AB played a scary video game together called *Kill it With Fire*. During one level, AB would jump when a spider would jump out. Estes would ask to feel AB's heartbeat and then put his hand over her shirt in the middle of her chest. Estes would leave his hand on, then-11-year-old AB's chest while she continued to play the video game until she would get up for something. Estes would do the same thing while AB was playing another scary video game, *Five Nights at Freddy's*.

In 2024, AJD disclosed to a therapist that Estes had molested her. AJD was 12 years old at the time of the abuse. As part of the resulting investigation, AJD was interviewed by a forensic interviewer for the Kitsap County Sheriff's Office. AJD said that Estes pulled her onto his lap and then covered them with a blanket. Then he put his hand under her pants and underwear and put his hand on her vagina and " 'laid [it] there, almost rubbing.' " 12 Verbatim Rep. of Proc. (VRP) at 5591. AJD described a specific instance where this happened while Estes' fiancé, Morrigan, and AB were in the room, and they were watching a movie after a shift at the haunted forest. AJD went

to the bathroom and texted her mom that she wanted to go home. AJD said the same thing occurred " '[a] little bit later that month, sometime in November, . . . sometime in December and maybe in January.' " *Id.* at 5602. AJD described another specific instance where they were watching a movie the night before a Christmas party at Estes' house.

As part of the investigation, Detective (Det.) Meyer interviewed Estes. When Det. Meyer asked Estes whether he had ever touched AJD's vagina, Estes replied " 'I don't know.' " 11 VRP 5020.

The State charged Estes with a total of six counts of second degree child molestation for acts committed against AJD and AB.

## II. PRETRIAL PROCEEDINGS

At a CrR 3.5 hearing, Estes' counsel opposed admission of Estes' statements to law enforcement because Estes would not have believed that he was free to leave during the questioning and the questions asked were reasonably likely to elicit an incriminating response.

Det. Meyer testified that as part of the investigation, he called Estes, informed him that an allegation had been made against him, and asked if Estes would be willing to meet with him and talk about the allegations. Estes initially responded that he could not meet with Det. Meyer because he was at work. Det. Meyer followed up a few days later and Estes agreed to meet with him at the sheriff's office. Estes determined the time and day of the interview. Det. Meyer did not arrest, handcuff, or search Estes at any time before or during the interview at the sheriff's office. Det. Meyer told Estes that he was free to leave. During the interview, the door to the interview room was either fully open or partially ajar. While in the interview room, Det. Meyer told Estes that if Estes wanted to leave, he would buzz him through the door in the hall leading to the interview

4

room. Det. Meyer told Estes that he could refuse to answer questions. Estes never refused to answer a question or requested to end the interview. After Det. Meyer told Estes that he was ending the interview, Estes continued the discussion and asked Det. Meyer several questions. Det. Meyer did not read Estes his *Miranda* rights at any point during their interaction.

Following argument on the matter, the trial court concluded Estes

> was not under formal arrest during the interview. Mr. Estes freely and voluntarily submitted to the interrogation. Mr. Estes was not coerced into answering questions. Mr. Estes was not under threat or promise to get him to answer questions. Mr. Estes was not subject to custodial interrogation when interviewed by Detective Meyer[ ].

6 VRP at 2517. The trial court ruled that, pursuant to CrR 3.5, Estes' statements were admissible at trial.

Estes filed four motions in limine asking the court to exclude evidence that Estes bought gifts for the girls, texted them, and cuddled with them. The trial court denied Estes' motions in limine, concluding that those issues were relevant to the special allegation of breach of trust. The trial court further concluded,

> The State also wants to show a common scheme or plan under Rule 404(b) and that they're cross-admissible. Well, certainly the testimonies that may be elicited by the State from each of those witnesses concerning allegations of sexual molestation are admissible directly for the relevance of those particular charges associated with that victim. And once they are introduced evidence -- so there's no limitation on introducing that evidence as far as relevance is concerned. . . .
>
> . . . .
>
> . . . [I]t is evidence of a common scheme or plan or intent.

*Id.* at 2519-20.

III. TRIAL

A. AJD's Testimony

At trial, with the exception of AJD, the State's witnesses testified consistent with the above. As in her forensic interview, AJD testified that she sat on Estes' lap with a blanket over them and Estes would put his hand underneath her underwear and rest it on her vagina. AJD stated that other people would be in the room when this happened, "[m]ost times it would be [AB]. Sometimes Morrigan would be there. A few times Alex [(Estes' roommate)] was there." 12 VRP at 5540. AJD believed this had happened more than five times. AJD said this happened after a shift at the haunted forest. When asked whether she remembered watching a movie at Estes' house the day before the Christmas party, AJD responded "No." *Id.* at 5545. AJD eventually said that a touching occurred around Christmas but could not recall whether the touching occurred above or below her clothes, where she was sitting when it happened, or whether Estes had a blanket. When asked about the first time this happened, AJD initially said she did not remember, but later said it was after volunteering at the haunted forest and only AB was present. AJD recalled going to the bathroom to text her mom once, but could not remember what the message said.

The State moved to admit AJD's forensic interview under ER 803(a)(5) as a recorded recollection. Estes' counsel opposed admission of the interview, arguing that AJD demonstrated that she had some independent memory of the events she spoke about in the interview. The trial court ruled that the requirements of ER 803(a)(5) had been met and allowed the witness to read the interview into the record as substantive evidence.

B. Closing Arguments

In closing argument, the State summarized Det. Meyer's interview with Estes emphasizing that Estes responded " 'I don't know' " when asked if he touched AJD's vagina. 14 VRP at 6542.

In response, Estes' counsel argued that if the jury rewatches the clip of the interview enough times, they will "come to the conclusion that [Estes] was saying 'I don't know' in terms of whether any contact could have happened." *Id.* at 6558. And counsel emphasized Estes' statements denying that he touched the girls sexually. Estes' counsel also read the jury instructions concerning separate counts, jury instructions 7 and 17. Jury instruction 7 stated, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Clerk's Papers (CP) at 129.

In rebuttal, the State explained "if you believe that [Estes] was touching that 12-year-old girl's vagina for sexual gratification, if you believe that he was grooming her, . . . you can use that as evidence that, when he touched [AB]'s chest, it was for sexual gratification." 14 VRP at 6581. As it related to the counts pertaining to AJD, the State identified at least four separate instances of alleged molestation: the conduct that occurred the night in October after the haunted forest when Morrigan was in the room and AJD texted her mom (count I); the conduct that occurred on a night in October when Morrigan was not there (count II); the conduct that occurred on November 17 (count III); and the conduct in December before the Christmas party (count IV).

The jury found Estes guilty on all six counts of second degree child molestation, each with a special allegation of abuse of trust.

DISCUSSION

I. SUFFICIENCY OF THE EVIDENCE

A. Legal Principles

On review of the sufficiency of the evidence to support a criminal conviction, this court, after viewing the evidence in the light most favorable to the prosecution, must determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). All reasonable inferences from the evidence must be drawn in favor of the State. *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024). Circumstantial evidence can be sufficient to uphold a verdict. *Id.* This standard of review is " 'highly deferential to the [trier of fact's] decision, and we do not consider questions of credibility, persuasiveness, and conflicting testimony.' " *Id.* (internal quotation marks omitted) (quoting *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion)).

A person is guilty of the crime of second degree child molestation if: "the person has . . . sexual contact with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.086. "Sexual contact" is "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party." RCW 9A.44.010(13). Sexual gratification is not an essential element of this crime, but a definition that clarifies the meaning of the essential element of "sexual contact." *State v. Lorenz*, 152 Wn.2d 22, 34-35, 93 P.3d 133 (2004). " 'Cases in which the evidence shows touching through clothing, or touching of intimate parts of the body other than the primary erogenous areas, . . . require[ ] some additional evidence of sexual gratification.' "

8

*State v. Price*, 127 Wn. App. 193, 202, 110 P.3d 1171 (2005), *aff'd*, 158 Wn.2d 630, 146 P.3d 1183 (2006) (quoting *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991)). The determination of which anatomical parts, other than the breasts and genitalia, are "intimate" is a question for the trier of fact. *In re Welfare of Adams*, 24 Wn. App. 517, 520, 601 P.2d 995 (1979). "A jury may determine that 'parts of the body in close proximity to the primary erogenous areas' are intimate parts." *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *Welfare of Adams*, 24 Wn. App. at 521).

B. Counts Pertaining to AB

Estes contends that insufficient evidence supported his convictions for second degree child molestation pertaining to AB because there was no evidence that he touched AB's chest for sexual gratification. The State responds that the duration of the touching of AB's chest supports the inference that the touching was for sexual gratification. We agree with the State.

The duration, placement, and context of the touching support the conclusion that Estes placed his hand on AB's chest for his sexual gratification. Estes told AB that he was placing his hand on her chest to feel her heartbeat. A reasonable jury could conclude that Estes' hand, at least in part, touched an intimate area, AB's breasts. Moreover, a reasonable jury could conclude that the chest, being in close proximity to the breasts, is an intimate part. And Estes' hand was not on AB's breast fleetingly. Estes would leave his hand on AB's chest until she moved. A reasonable jury could conclude that this was because he was touching her chest for his sexual gratification. Additionally, the jury could infer that Estes' touching of AB was for sexual gratification in light of the evidence showing that Estes also touched AJD's vagina for sexual gratification.

C. Counts Pertaining to AJD

Estes argues that insufficient evidence supported his convictions for two of the four counts of second degree molestation pertaining to AJD because AJD could only recall two specific incidents of molestation rather than four. The State contends that AJD's more general testimony was sufficient to support all four counts. We agree with the State.

Under Washington law, "generic" child testimony is sufficient to support multiple count sexual assault convictions where three requirements are met:

> First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed. Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution. Third, the alleged victim must be able to describe the general time period in which the acts occurred.

*State v. Hayes*, 81 Wn. App. 425, 438, 914 P.2d 788 (1996).

Here, AJD testified about at least three specific incidents when Estes touched her vagina: two separate incidents after working at the haunted forest, one where Morrigan was there and one where she was not, and a touching around Christmas. AJD's general testimony is sufficient to support that at least one additional incident occurred. AJD testified that Estes touched her vagina more than five times. AJD testified that the touching was the same on all occasions: AJD would sit on Estes' lap with a blanket over them, and Estes would put his hand on her vagina under her underwear, leaving it there until she moved. AJD testified that on different occasions, different people were in the room, "[m]ost times it would be [AB]. Sometimes Morrigan would be there. A few times Alex was there." 12 VRP at 5540. AJD also provided a specific time frame during which the incidents occurred. After describing an incident in October, AJD said the other incidents

10

occurred " 'sometime in November, . . . sometime in December and maybe in January.' " *Id.* at 5602. Accordingly, sufficient evidence supported all four convictions pertaining to AJD.[3]

## II. ADMISSION OF THE FORENSIC INTERVIEW

Estes argues that the trial court erred by allowing the prosecutor to read AJD's forensic interview into evidence as a recorded recollection because at trial, AJD had sufficient knowledge of two incidents of molestation and, with respect to the other two incidents, AJD's recorded statement did not include any reference to or description of these incidents, so the statement could not have pertained to a matter about which the witness once had knowledge. We disagree.

A. Legal Principles

An out-of-court statement is generally inadmissible hearsay when offered in evidence to prove the truth of the matter asserted. ER 801, 802. However, ER 803(a)(5) an out-of-court statement is not excluded under the hearsay rule if it is

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

We review the trial court's admission of statements under ER 803(a)(5) for an abuse of discretion. *State v. Alvarado*, 89 Wn. App. 543, 548, 949 P.2d 831 (1998).

---

[3] In his statement of additional grounds, Estes also argues that insufficient evidence supported his convictions. Estes does not explain what elements of the crimes he was convicted of were not supported by evidence. To the extent that this argument is addressed by this analysis, we need not address it further. To the extent that Estes is arguing that some additional evidence was lacking, RAP 10.10(c) requires Estes to inform us of the "nature and occurrence of [the] alleged errors." This assertion of error is too vague to allow us to identify the issues and we do not reach it.

B. Application

In the forensic interview AJD discussed two specific incidents, one of which occurred in October, and one of which occurred in December. However, AJD was unable to testify fully and accurately about either of those instances. As it related to the October incident, AJD testified that Estes touched her vagina after a shift at the haunted forest and that AB, and only AB, was there. But in her forensic interview, AJD stated that during this particular occurrence, Alex and Morrigan were also there.

As it related to the December incident, AJD was unable to testify whether that touching was above or below her clothes, where she was sitting, and whether Estes had a blanket with him. However, in her interview she said that Estes touched her vagina below her clothes under a blanket while they were watching a Christmas movie. Estes fails to demonstrate error with regard to the October and December incidents. And even if AJD had sufficient knowledge of these events, Estes fails to explain how he was prejudiced by admission of AJD's statements in the forensic interview concerning these same events, nor does he persuade us that any prejudice would warrant reversal.

With regard to the other instances of Estes touching AJD, Estes' argument is unclear. To the extent he's arguing that before a recorded recollection detailing an event can be admitted the witness must first have testified with some unspecified level of detail about the incident in their trial testimony, this is not a requirement set forth in the rule and Estes cites no authority supporting this additional hypothetical foundational requirement. If a witness is unable to recall details of an event about which they once had knowledge and made a statement while the event was fresher in their mind, the statement is admissible as a recorded recollection. ER 803(a)(5).

To the extent he's arguing that AJD did not actually mention, in the interview, any other incidents than the specific incidents she mentioned from October and December, this is belied by the record. In her recorded statement, AJD said that in addition to the incident in October, Estes touched her " '[a] little bit later that month, sometime in November, . . . sometime in December and maybe in January.' " 12 VRP at 5602. These incidents AJD alludes to in her recorded statement, and about which she could not sufficiently recall in her testimony, satisfy the elements required for admission of a recorded recollection. Her lack of abundant detail about the incidents, both in her testimony and in her recorded statement, goes to the weight of that evidence.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

A. Legal Principles

The right to counsel includes the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient, . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Performance is deficient if it falls below an objective standard of reasonableness based on the record established at trial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel performed reasonably, but this presumption can be overcome when " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (quoting *Reichenbach*, 153 Wn.2d at 130). To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *Id.* at 34 (quoting *State*

*v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We need not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

B. Failure to Sever Claims

Estes argues that he received ineffective assistance of counsel because his attorney did not move to sever the charges pertaining to AB from those pertaining to AJD. The State counters that a motion for severance was unlikely to be granted given that the trial court's ER 404(b) ruling, which Estes does not challenge in this appeal, rendered the evidence concerning both victims cross-admissible in separate trials. We agree with the State.

To establish prejudice in the context of an ineffective assistance of counsel claim arising from counsel's failure to move for severance, the defendant must show (1) "that a severance motion would likely have been granted," and (2) that "there is a reasonable probability that the jury would not have found him guilty of" the severed charges. *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009). The trial court considers the following factors to determine whether charges should be severed: " '(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.' " *Id.* at 884-85 (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)). After this balancing, "any residual prejudice must be weighed against the need for judicial economy." *Russell*, 125 Wn.2d at 63.

Here, the strength of the State's evidence was relatively similar as it pertained to the counts involving AJD and the counts involving AB. Both sets of charges relied on similar context: Estes

developing a friendship with the girls through their shared interest in the My Haunted Forest. And both sets of charges relied on testimony from the victim that Estes placed his hand on an intimate part of their body while they were in his care. Estes' defense was identical whether the claims were severed or joined: that he did not touch AJD's vagina and that he did not have sexual contact with AB because he did not place his hand on AB's chest for the purpose of his sexual gratification. The court instructed the jury to consider each count separately. Estes argues that the instructions were somehow deficient because they did not prevent the jury from considering the alleged grooming of AJD in its consideration of the counts involving AB. But such an instruction would have been inaccurate in light of the trial court's ER 404(b) ruling that evidence pertaining to each victim was cross-admissible as to the other. Again, Estes does not assign error to the trial court's ER 404(b) ruling. Unchallenged conclusions of law become the law of the case. *State v. Glant*, 13 Wn. App. 2d 356, 366 n.5, 465 P.3d 382 (2020). Estes fails to demonstrate any prejudice from counsel's failure to sever claims where he has not challenged the trial court's ER 404(b) ruling. Accordingly, Estes did not receive ineffective assistance of counsel.

C. Failure to Address Statement to Law Enforcement

In his statement of additional grounds for review (SAG), Estes argues that trial counsel was ineffective for failing to address, in closing, the portion of Estes' interview with Det. Meyer when Det. Meyer asked Estes if he touched AJD's vagina and Estes responded " 'I don't know.' " SAG at 3. Prior to trial, Estes' counsel argued that Estes' statements in the interview were inadmissible because he had not been read his *Miranda* rights. After the trial court ruled that Estes' statements were admissible, Estes' counsel argued in closing that if the jury rewatches the clip enough times, they will "come to the conclusion that [Estes] was saying 'I don't know' in terms of whether any

contact could have happened." 14 VRP at 6558. And defense counsel emphasized Estes' statements denying that he touched the girls sexually. Contrary to Estes' assertion, counsel appears to have made every reasonable effort to address the State's characterization of Estes' statement as an admission. Accordingly, Estes has not demonstrated that counsel's conduct was deficient.[4]

D. Ineffective Assistance of Appellate Counsel

In his SAG, Estes also argues that he received ineffective assistance of appellate counsel because his counsel declined communication with him and did not send him the record on review. Estes' complaint about his communication with his appellate counsel would require us to consider matters outside of our record, which we are not permitted to do. *McFarland*, 127 Wn.2d at 338. As such, we decline to consider this claim.

Estes further argues that appellate counsel "minimally addressed issues that clearly had merit, causing prejudicial effect." SAG at 8. But Estes does not identify the issues he believes appellate counsel should have, but did not, raise.

> Although RAP 10.10(c) does not require that a SAG refer to the record or cite authority, the rule does require an appellant to inform this court of the 'nature and occurrence of the alleged errors.' We cannot review a SAG claim if it is too vague to properly inform us of the claimed error.

*State v. Hand*, 199 Wn. App. 887, 901, 401 P.3d 367 (2017), *aff'd*, 192 Wn.2d 289, 429 P.3d 502 (2018). Thus, we do not consider this claim. More importantly, he does not demonstrate that he would have prevailed on appeal had counsel raised these hypothetical issues. Because Estes cannot

---

[4] Estes implies that the State's characterization of his statement as an admission constitutes misconduct by referring to it as an "improper misconduct argument[ ]." SAG at 5. Estes does not explain why this characterization was improper nor does he provide any argument in support of this contention. To the extent that Estes' use of the phrase "improper misconduct argument" is an argument, it is too vague for our review. RAP 10.10(c).

demonstrate he would have prevailed on these unraised issues, he cannot demonstrate prejudice. *In re Pers. Restraint of Netherton*, 177 Wn.2d 798, 801, 306 P.3d 918 (2013).

## IV. Fifth Amendment Right Against Self Incrimination

Estes argues that the trial court violated his Fifth Amendment rights when it admitted statements he made during his interview with Det. Meyer because Estes was not read his *Miranda* warnings prior to the interview. We conclude that Estes' Fifth Amendment rights were not violated because Estes was not in custody at the time of the interview.

### A. Legal Principles

In reviewing a CrR 3.5 hearing, we ask first if the findings of fact are supported by substantial evidence. *State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 755, 294 P.3d 857 (2013). Next, we review whether conclusions of law were properly derived from findings of fact de novo. *Id.*

The right not to incriminate oneself arises from the Fifth Amendment to the United States Constitution, as well as article I, section 9 of the Washington Constitution. *State v. Radcliffe*, 164 Wn.2d 900, 905, 194 P.3d 250 (2008). To protect this right, a suspect must receive *Miranda* warnings when facing custodial interrogation by an agent of the State. *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). A person is in custody if "a reasonable person in a suspect's position would have felt that [their] freedom was curtailed to the degree associated with a formal arrest." *Id.* at 218. If a suspect does not receive *Miranda* warnings, their statements are presumed involuntary and must be excluded. *Id.* at 214.

B. Application

Estes contends that he was in custody when he made his statements because the interview was conducted by a law enforcement officer in the "bowels" of the police station. Br. of Appellant at 48. But under the circumstances, a reasonable person would not have felt that their freedom was curtailed to the degree associated with formal arrest. Estes voluntarily agreed to meet with Det. Meyer to discuss the allegations against him. Estes determined the time and day of the interview. Det. Meyer did not arrest, handcuff, or search Estes at any time before or during the interview. Det. Meyer repeatedly told Estes that he was free to leave. The door to the interview room was at least partially open during the entire interview. Once in the interview room, Det. Meyer offered to buzz Estes through the door in the hall leading to the interview room if he wanted to leave. Estes never told Det. Meyer that he wanted to end the interview early. In fact, after Det. Meyer asked Estes all of his questions, Estes continued the interview by asking Det. Meyer questions. Under these circumstances, a reasonable person would not believe that their freedom had been restricted to the degree associated with formal arrest. Accordingly, Estes' Fifth Amendment rights were not violated.

CONCLUSION

We conclude (1) the facts that Estes, an unrelated adult, placed his hand on AB's chest for an extended period of time for no medical or caregiving purpose, and that Estes similarly placed his hand on AJD's intimate parts for an extended period of time, support the conclusion that Estes touched AB's chest for his sexual gratification, (2) AJD's general testimony concerning the multiple incidents in which Estes touched her vagina was sufficient evidence to support the four counts of child molestation pertaining to AJD, (3) the trial court did not abuse its discretion by

admitting AJD's forensic interview as a recorded recollection because the substance of the interview demonstrates that AJD had knowledge of more than four instances of abuse at the time of the interview and her testimony at trial demonstrates that AJD could not remember the events well enough to testify about them fully and accurately at trial, (4) Estes did not receive ineffective assistance of counsel because he fails to demonstrate that trial counsel's failure to move to sever the counts pertaining to AB from those pertaining to AJD resulted in prejudice where he does not challenge the trial court's ruling that evidence of the abuse against each victim was cross-admissible, and (5) Estes' Fifth Amendment rights were not violated because the interview was not custodial. Furthermore, we decline to address the issues raised in Estes' SAG because they either are too vague to address, were already raised by appellate counsel, or rely on matters outside the record. Accordingly, we affirm Estes' convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

PRICE, A.C.J.

MAXA, J.